# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

JOHN EDLUND,

      Plaintiff,

v.                          CASE NO.: 3:21-cv-1319-TKW-HTC

LAMBERT ELECTRIC INC.,

      Defendant.

_____/

## **FIRST AMENDED COMPLAINT**

Plaintiff, John Edlund, (hereinafter referred to as the "Plaintiff" or "Edlund"), by and through his undersigned attorney, sues the Defendant, Lambert Electric, Inc., (hereinafter referred to as the "Defendant" or "LEI"), and alleges as follows:

### INTRODUCTION

1. Plaintiff brings this action for disability discrimination and retaliation under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; and discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-634.

### JURISDICTION AND VENUE

2. The jurisdiction of the Court over this controversy is invoked pursuant to 29 U.S.C. § 2617(a)(2); 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f).

3. Plaintiff further seeks declaratory, injunctive, and equitable relief

1

pursuant to 28 U. S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

4. Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54.

5. This action lies in the Northern District of Florida, Pensacola Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

6. Plaintiff has complied with all conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f) and the Florida Civil Rights Act of 1992, as amended, Chapter 760 et seq., Florida Statutes. On August 11, 2020, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202126541) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D202001186). On February 5, 2021, the FCHR issued a determination pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested his ninety (90) day Notice of Right to Sue letter from the EEOC which was received on July 19, 2021.

## PARTIES

7. Plaintiff is a citizen of the State of Florida and resides in Escambia County.

8. Defendant, Lambert Electric, Inc. is located in Destin, FL, and is a residential and commercial electrical installation company which does business in the State of Florida.

## GENERAL FACTS

9. Plaintiff is a 57 year old Caucasian male.

10. Plaintiff was employed by Defendant from January 14, 2020, until his termination on July 7, 2020.

11. Plaintiff was hired by Defendant as an electrician's helper.

12. Plaintiff satisfied the Defendant's legitimate prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, and/or licenses.

13. Throughout Plaintiff's employment with Defendant, he performed the duties and responsibilities of his position in a satisfactory manner.

14. On April 15, 2020, Plaintiff arrived at the worksite and started his daily routine.

15. Due to the extreme heat of working outside in Florida in July, Plaintiff placed a fan next to himself to prevent from becoming overheated.

16. Later that day, Plaintiff's direct supervisor Mr. Bill Guthrie, came over to Plaintiff's area and began making derogatory comments about him being too old and moving too slowly to do this kind of work.

17. At the time of these remarks, Plaintiff was the oldest of Defendant's employee on the jobsite.

18. Later that same day, Mr. Guthrie took Plaintiff's fan and gave it to the other younger employees which already had one.

19. After asking Mr. Guthrie, why he took his fan and was making comments about his age, Mr. Guthrie directed Plaintiff to dig a trench for the remaining four days of the work week with only a shovel.

20. After being instructed to start digging the trench, Plaintiff informed Mr. Guthrie that he suffered from rheumatoid arthritis.

21. Plaintiff also informed Mr. Guthrie that because of his rheumatoid arthritis he was not able to conduct this type of work (digging, bending, standing or lifting) for long periods of time.

22. Plaintiff asked Mr. Guthrie if he could have someone help him dig the trenches or to be put on another job because of his physical limitations.

23. Plaintiff asked Mr. Guthrie in good faith, reasonably believing that his request for assistance in digging the trenches or to be moved to another job, was a reasonable accommodation considering his physical limitations.

24. Mr. Guthrie did not respond and kept Plaintiff assigned to the trench digging project with no help or mechanical aide other than a shovel.

25. Defendant had knowledge that Plaintiff was a qualified individual with

a disability, rheumatoid arthritis, as Mr. Guthrie was directly informed by Plaintiff of his medical condition and physical limitations due to his rheumatoid arthritis.

26. Defendant failure to grant Plaintiff's accommodation request and being required to dig trenches all week, made Plaintiff's rheumatoid arthritis flare up causing his physical mobility to become worse.

27. Plaintiff continued to ask and object to why Mr. Guthrie refused to discuss his medical condition or provide him any help or assistance digging the trenches.

28. Plaintiff also complained to Defendant that all the trench digging was causing his hands, arms, legs and joint to swell and that it was becoming harder for him to move around, bend and dig the trenches.

29. Defendant continued to ignore Plaintiff's complaints and renewed requests to be removed from trench digging duty or at least have assistance in digging the trenches.

30. Defendant's intentional disregard of Plaintiff's reasonable accommodation requests were intended to try and make Plaintiff quit.

31. Plaintiff continued to dig trenches all week and as a result of the strenuous work, his rheumatoid arthritis made him ill, he started running a fever, suffered from fatigue, had difficulty sleeping, and could hardly walk, bend over or standing for long periods of time.

32. Because of his poor physical condition resulting from his rheumatoid arthritis, Plaintiff could not continue to work and needed to go home.

33. Because Plaintiff was running a fever, and out of an abundance of caution considering the current pandemic, he went to get tested for COVID-19, to make sure that his symptoms were not related to the virus.

34. Plaintiff told Mr. Guthrie that he had been tested for COVID-19 and that he would return to work pending a negative result.

35. The following day, Mr. Guthrie contacted Plaintiff and requested that he resign his position.

36. Plaintiff refused to resign from his position and on July 7th, 2020, Plaintiff was notified that his employment with Defendant had been terminated.

## FIRST CAUSE OF ACTION
*DISABILITY DISCRIMINATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

37. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 7 through 15 and 19-36 of this complaint with the same force and effect as if set forth herein.

38. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment.

39. At all times material hereto, Plaintiff was an employee of Defendant and Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), as the Defendant employed more than 15 employees.

40. As such, Defendant is prohibited from discriminating against any qualified individual with a disability.

41. Plaintiff is, and was at all time pertinent hereto, a qualified individual with a disability.

42. Plaintiff suffers from rheumatoid arthritis which is a condition that impacts his musculoskeletal system.

43. Plaintiff's rheumatoid arthritis affects his joints and bones and other internal organs and systems.

44. Rheumatoid arthritis can also cause fatigue, difficulty sleeping, bending, walking and standing for long periods of time, it can also make an individual feel sick or tired, and can cause a fever.

45. Rheumatoid arthritis is an impairment and disability within the meaning of the ADA as it substantially limits Plaintiff's ability to perform major life activities as compared to most people in the general population.

46. Plaintiff's rheumatoid arthritis was not under control during the times at issue herein, because at the conclusion of digging trenches for a week his arthritis

made it nearly impossible for Plaintiff to walk, bend, lift or stand for long periods of time, or lift heavy weights (like shovel spades of dirt).

47. Plaintiff's rheumatoid arthritis substantially limited his ability to perform the major life function of standing, walking, bending, lifting and effected his general musculoskeletal function.

48. Upon learning of Plaintiff's rheumatoid arthritis and requested accommodations, Defendant failed engage in a good faith interactive process with Plaintiff to determine the reasonableness of his requested accommodation.

49. Upon learning of Plaintiff's rheumatoid arthritis and requested accommodations, Defendant was under an obligation to engage in a good faith interactive process with Plaintiff.

50. Defendant did not engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's rheumatoid arthritis nor did Defendant "explore potential accommodations" to overcome those limitations.

51. Defendant failure to grant Plaintiff's accommodation request along with its failure to engage in this interactive process and Defendant requiring Plaintiff to dig trenches all week, made Plaintiff's rheumatoid arthritis flare up causing his physical mobility to become worse.

52. Defendant's termination and disqualification of Plaintiff's employment

on July 7, 2020, on the basis of his disability and Defendant's failure to make a good faith individual assessment to determine whether Plaintiff could be employed or whether a reasonable accommodations would enable him to be employed by Defendant, violated the ADA.

53. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to his termination, is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity and for any actual or perceived disability.

54. The adverse personnel action, the termination of Plaintiff's employment, clearly violated his statutory protected rights and constituted a prohibited employment practice, contrary to the public policy of the under the Americans with Disabilities Act, (ADA).

55. As a result of the Defendant's violations of the ADA, Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon mental, psychological and emotional distress, and anxiety from difficult economic circumstances, resulting from his unlawful discharge.

## SECOND CAUSE OF ACTION
*DISABILITY RETALIATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

56. Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs 7 through 15 and 19-36 of this complaint with the same force and effect as if set forth herein.

58. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from retaliating against qualified individuals for objecting to discriminatory acts or for requesting an accommodation.

59. Defendant terminated and disqualified Plaintiff from his employment in retaliation for questioning and objecting to Defendant's failure to discuss his accommodation requests and for requesting an accommodation.

60. Defendant acknowledged and regarded Plaintiff as disabled (perceived or otherwise) and as having an impairment.

61. When Plaintiff provided Defendant with sufficient information regarding his rheumatoid arthritis and requested a reasonable good faith accommodation, Plaintiff's requests became and were considered a statutorily protected activity under the ADA.

62. Defendant did not engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's disability nor did Defendant "explore potential accommodations" to overcome those limitations.

63. Plaintiff questioned and objected to Defendant's failure to discuss his accommodation requests and further complained to Defendant that all the trench digging was causing his hands, arms, legs and joint to swell and that it was becoming

harder to move around, but Defendant maintained Plaintiff's trenches digging duties.

64. Prior to Plaintiff's termination, he had not been the subject of any disciplinary action written or otherwise, yet he was asked to resign.

65. When Plaintiff refused to resign he was then told that he was terminated.

66. Defendant's July 7, 2020, termination and disqualification of Plaintiff's employment was in retaliation for him seeking a good faith accommodation, his objecting to Defendant's discriminatory practices regarding his disability and requested accommodation, constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the ADA.

67. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to his termination, is entirely *pretextual* for Defendant's retaliation against him for engaging in the statutory protective activity of requesting a reasonable accommodation.

THIRD CAUSE OF ACTION
*Age Discrimination*
*Age Discrimination Employment Act ("ADEA")* 29 U.S.C. §§ 621-634.

68. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 7 through 19 and 33-36 of this complaint with the same force and effect as if set forth herein.

69. Defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA).

70. At all times material hereto, Plaintiff was an employee of Defendant and Defendant was an employer within the meaning of Age Discrimination in Employment Act of 1967 (ADEA), as the Defendant employed more than 20 employees.

71. Plaintiff is a fifty seven (57) year old Caucasian male.

72. Plaintiff was more than qualified to perform the position of an electrical helper and did so in a satisfactory manner.

73. Plaintiff was treated less favorably than his younger co-workers.

74. On July 7, 2020, Defendant terminated Plaintiff's employment.

75. Plaintiff was replaced by a younger less qualified individual.

76. Plaintiff is now suffering and will continue to suffer irreparable injury and as the result of Defendant's discriminatory acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a) Declaring the acts and practices complained of herein are violation of the, ADA and ADEA;

b) Enjoining and permanently restraining those violations of the

ADA and ADEA;

c) Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d) Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to the ADA and/or ADEA;

e) Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory treatment of him and make him whole for all earnings he would have received but for Defendant's discriminatory treatment, Statutory damages for lost wages, value of lost pension, insurance benefits, profit sharing and other benefits or compensation, plus interest thereon at the statutory rate, pursuant to the ADA and/or ADEA;

f) Awarding liquidated damages pursuant to the ADEA, 29 U.S.C. §0626(b);

g) Awarding compensatory damages pursuant to the ADA for Plaintiff's discrimination claim;

h) Granting such other relief as is and may be available under the ADA and interpreting case law, including such equitable relief as the Court deems just and proper in the premises for Plaintiff's ADA retaliation claims.

i) Awarding Plaintiff attorney's fees, expert witness fees, and costs

of this action, pursuant to ADA and/or ADEA;

  j)  Granting such other and further equitable relief as is available under either the ADA and/or ADEA of as the Court deems just and proper in the premises.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: November 15, 2021.  By: */s/ Clayton M. Connors*
            CLAYTON M. CONNORS
            Florida Bar No.: 0095553
            Email: cmc@westconlaw.com
            **THE LAW OFFICES OF**
            **CLAYTON M. CONNORS, LLC.**
            4400 Bayou Blvd., Suite 32A
            Pensacola, Florida 32503
            Tel: (850) 473-0401
            Fax: (850) 473-1388
            Attorney for Plaintiff